## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STEVEN M. PETERS,                          :        Civil No. 3:22-cv-1542
                                           :
                Plaintiff                  :        (Judge Mariani)
                                           :
        v.                                 :
                                           :                          FILED
PRIME CARE MEDICAL INC., *et al.*,         :                        SCRANTON
                                           :                         MAY 1 1 2023
                Defendants                 :                   PER_____ DEPUTY CLERK

### MEMORANDUM

Plaintiff Steven Peters ("Peters"), an inmate formerly held as a pretrial detainee at

the Perry County Prison, initiated this civil rights action pursuant to 42 U.S.C. § 1983. (Doc.

1).  Named as Defendants are the Perry County Prison, Warden Barclay, and two John Doe

correctional officers (collectively, the "County Defendants"), and PrimeCare Medical, Inc.

("PrimeCare") and Shelby Bailey, LPN (together, the "PrimeCare Defendants").  Presently

before the Court is a Rule 12(b) motion (Doc. 23) to dismiss by the County Defendants.

Peters failed to respond to the motion and the time for responding has now passed.[1]

Therefore, the motion is deemed unopposed and ripe for resolution.  For the reasons set

forth below, the Court will grant the motion.  The Court will also dismiss the action against

the John Doe Defendants pursuant to Federal Rule of Civil Procedure 4(m).

---

[1]  Peters was directed to file a brief in opposition to Defendants' motion and was admonished that failure to file an opposition brief would result in Defendants' motion being deemed unopposed.  (Doc. 27) (citing M.D. PA. LOCAL RULE OF COURT 7.6).

I.      **Allegations of the Complaint**

On December 18, 2021, prior to his detention at the Perry County Prison, Peters underwent surgery on his right leg to repair injuries sustained in a motorcycle accident. (Doc. 1 ¶¶ 1-3).  Peters was prescribed pain medication, had to use crutches, and undergo physical therapy.  (*Id.* ¶ 5).

On March 11, 2022, Peters was arrested for violating terms of his probation and was detained at the Perry County Prison for approximately five (5) days.  (*Id.* ¶¶ 7-8, 13).  Peters asserts that when he arrived at the Perry County Prison, he was using crutches and was admitted to the Prison's medical unit.  (*Id.* ¶¶ 9-10).  He asserts that he arrived at the Perry County Prison on a Friday, and the Prison did not have medical staff available on the weekend "to handle [his] types of injuries."  (*Id.* ¶ 13).  Peters alleges that he requested to be transported to an outside hospital because the Perry County Prison did not have access to medical staff twenty-four hours per day.  (*Id.* ¶¶ 12-14).

On March 14, 2022, Nurse Bailey allegedly performed a medical evaluation.  (*Id.* ¶ 15).  Peters alleges that Nurse Bailey took his vitals, administered COVID-19 and tuberculosis tests, but failed to assess his leg.  (*Id.*).

On March 15, 2022, Peters was released from the Perry County Prison.  (*Id.* ¶ 17).  Peters believes that he was released from the Perry County Prison due to the Prison's alleged inability to tend to his medical needs.  (*Id.* ¶¶ 17-18).

Peters sets forth claims under the cruel and unusual punishment clause of the Eighth Amendment, a failure to train claim, a *Monell*[2] liability claim, and a claim under the Pennsylvania Constitution.  (*Id.* at pp. 8-9).

## II.    <u>Legal Standard</u>

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555).  In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted).  A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

---

2    *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

*Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

III.   **Discussion**

A.   **Lack of Personal Involvement of Warden Barclay**

Defendant Barclay seeks dismissal of the complaint based on a lack of personal involvement.  Importantly, individual liability will be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct.  *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)).  Liability "cannot be predicated solely on the operation of *respondeat superior.*" *Id.*  In other words, defendants in Section 1983 civil rights actions "must have personal involvement in the alleged wrongs . . . shown through allegations of personal direction or of actual knowledge and acquiescence."  *Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003); *Rode*, 845 F.2d at 1207-08.  Acquiescence requires both contemporaneous knowledge of the alleged wrongdoing and direct supervisory authority over the subordinate actor. *Atkinson*, 316 F.3d at 271; *Rode*, 845 F.2d at 1207-08.  Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible.  *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08.  When a plaintiff merely hypothesizes that an individual defendant may have had knowledge of or personal involvement in the deprivation of his or her rights, individual liability will not follow.  *Atkinson*, 316 F.3d at 271; *Rode*, 845 F.2d at 1207-08.

"[T]here are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused

the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quotation and alteration marks omitted).

With regard to the second theory, a plaintiff must show that each defendant personally participated in the alleged constitutional violation or approved of it. *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (finding that in a § 1983 suit, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct"). Liability "cannot be predicated solely on the operation of *respondeat superior.*" *Id. See also Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015)

Peters alleges that Defendant Barclay "is legally responsible for the operations of [the Perry County Prison] and for the welfare of all the inmates of that prison." (Doc. 1 ¶ 2). The only allegation against Defendant Barclay is that "Warden BarClay nor PCP have never sought 24/7 during Warden BarClay's term with PCP." (*Id.* ¶ 12). It appears that Peters seeks to impose liability on Defendant Barclay based solely on her role as a warden/supervisor. He fails to allege that Defendant Barclay had any personal involvement in violating his constitutional rights, directed others to violate them, or, as the individual in charge, had knowledge of and acquiesced in subordinates' violations. The complaint against Defendant Barclay will be dismissed.

6

**B.     The Perry County Prison is not a Proper Defendant**

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege "the violation of a

right secured by the Constitution and laws of the United States, and must show that the

alleged deprivation was committed by a person acting under color of state law." *West v.*

*Atkins*, 487 U.S. 42, 48 (1988).  A prison or jail is not a "person" who is subject to liability

under 42 U.S.C. § 1983.  *See Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973).  Thus, the

Perry County Prison is not a proper Defendant as it is not a person subject to suit under 42

U.S.C. § 1983 and will be dismissed from this action.

**C.     Eighth Amendment Claim[3]**

In the context of medical care, the Eighth Amendment "requires prison officials to

provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182

F.3d 192, 197 (3d Cir. 1999).  To establish an Eighth Amendment claim based on a prison's

denial of medical care, an inmate must allege acts or omissions by prison officials that were

sufficiently harmful to establish deliberate indifference to a serious medical need.  *See*

*Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Natale v. Camden Cty. Corr. Facility*, 318

---

[3]     As set forth in the complaint, Peters was a pretrial detainee at the Perry County Prison.  The
Due Process Clause of the Fourteenth Amendment applies to pretrial detainees' claims of inadequate
medical care.  *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003).  The Supreme
Court, however, has held that the Fourteenth Amendment affords pretrial detainees protections that are "at
least as great" as those afforded to convicted prisoners under the Eighth Amendment.  *See id.* (quoting *City
of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).  In the context of claims for inadequate medical
care, the Third Circuit has "found no reason to apply a different standard than that set forth in *Estelle* [*v.
Gamble*, 429 U.S. 97 (1976)] (pertaining to prisoners' claims of inadequate medical care under the Eighth
Amendment) when evaluating whether a claim for inadequate medical care by a pre-trial detainee is
sufficient under the Fourteenth Amendment." *See id.*  Accordingly, the Court will analyze Peters' claim
under the framework of the Eighth Amendment.  *See id.* at 582.

F.3d 575, 582 (3d Cir. 2003). The relevant inquiry is whether the defendant: (1) was

subjectively deliberately indifferent (2) to the plaintiff's objectively serious medical needs.

*Farmer*, 511 U.S. at 834, 837; *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir.

2015).

The "deliberate indifference" prong of the applicable Eighth Amendment analysis

requires that the defendant actually know of and disregard "an excessive risk to inmate

health or safety." *Farmer*, 511 U.S. at 837. Circumstantial evidence can establish

subjective knowledge on the part of the defendant if it shows that the excessive risk was so

obvious that the official must have known about it. *See Beers-Capitol v. Whetzel*, 256 F.3d

120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 842). The Third Circuit has found

deliberate indifference when a prison official: "(1) knows of a prisoner's need for medical

treatment but intentionally refuses to provide it; (2) delays necessary medical treatment

based on a non-medical reason; or (3) prevents a prisoner from receiving needed or

recommended medical treatment." *Rouse*, 182 F.3d at 197.

The second prong of the Eighth Amendment inquiry is whether the plaintiff's medical

needs were serious. A serious medical need is "one that has been diagnosed by a

physician as requiring treatment or one that is so obvious that a lay person would easily

recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates v.*

*Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Not every condition is a serious medical need;

8

instead, the serious medical need element contemplates a condition of urgency, namely, one that may produce death, degeneration, or extreme pain. *See id.*

Moreover, because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation. *White v. Napoleon*, 897 F.2d 103, 108-10 (3d Cir. 1990); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[M]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."). The Supreme Court has held that negligence or inadvertence alone do not rise to the level of a constitutional violation. *Whitley v. Albers*, 475 U.S. 312 (1986). The Supreme Court has also noted that "[l]ack of due care suggests no more than a failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986). Where a state of mind is relevant, the complaint is inadequate if it merely contains conclusory allegations describing the requisite state of mind such as "intentionally" or "recklessly" without supporting factual allegations. *Wilson*, 501 U.S. 294. Additionally, prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients, *see Young v. Kazmerski*, 266 F. App'x 191, 194 (3d Cir. 2008), and a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. *See White*, 897 F.2d at 108-10.

Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. *See Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a

9

physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); *Pearson v. Prison Health Servs.*, 850 F.3d 528, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care.").

Peters has not set forth a plausible Eighth Amendment claim regarding inadequate medical care. Assuming, *arguendo*, that Peters' ailments presented a serious medical need, the complaint lacks sufficient allegations that the County Defendants were deliberately indifferent to such conditions. Peters acknowledges that when he arrived at the Perry County Prison, he was immediately placed in the Prison's medical unit. Peters presented to the Perry County Prison on Friday, March 11, 2022, and Nurse Bailey performed a medical assessment on Monday, March 13, 2022. Peters asserts that he did not have access to around-the-clock medical care and that the Defendants did not take "appropriate action over a 5 day[ ] course." (Doc. 1, p. 8). To the extent that Peters believes he should have received different treatment and should have been transferred to an outside medical center, this constitutes a "mere disagreement as to the proper medical treatment," and is not an actionable Eighth Amendment claim. *Lanzaro*, 834 F.2d at 346. Additionally, the failure to provide twenty-four-hour access to medical care does not amount to a constitutional violation. *See Boyett v. Cty. of Wash.*, 282 F. App'x 667, 673 (10th Cir. 2008) ("[T]here is no *per se* requirement that a jail provide its inmates around-the-clock access to a medical doctor."). Importantly, there is not a single allegation against the

County Defendants from which it can reasonably be inferred that they exhibited deliberate indifference to Peters' medical needs. The Court will grant the County Defendants' motion to dismiss this claim.

### D.    *Monell* Claim

To the extent that Plaintiff sets forth a claim in the form of a violation of a municipal policy under *Monell*, this claim will be dismissed. *Monell* requires a plaintiff to plead the existence of a policy or lack thereof, a policymaker that effectuated said policy, and a constitutional violation whose "moving force" was the policy in question. *Monell*, 436 U.S. at 694. A municipality cannot be held vicariously liable under § 1983 for acts of an employee or agent; rather, an official policy or custom of the municipality must have proximately caused the constitutional violation. *Id.* at 692. Peters does not point to any formal, officially promulgated policy, or custom, relating to his claims.

Peters also claims that the County Defendants are liable under a failure-to-train theory. (Doc. 1, pp. 8-9). To establish *Monell* liability on a theory of failure to train or supervise, a plaintiff must show that (1) "the failure amounts to 'deliberate indifference' to the rights of persons with whom [municipal] employees will come into contact" and (2) the alleged deficiency caused the constitutional violation that harmed the plaintiff. *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). On the deliberate indifference prong, the plaintiff must allege that "(1) municipal policymakers know that employees will confront a particular situation, (2)

the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quotation omitted). "Ordinarily" the plaintiff will need to show a "pattern of similar constitutional violations by untrained employees" that would put policymakers on notice of the need for training. *Thomas*, 749 F.3d at 223 (quoting *Connick v. Thompson*, 563 U.S. 51, 61-62 (2011)). Alternatively, the plaintiff can plead "single-incident liability" by showing that the need for training was "so obvious" that failure to provide it can be said to amount to deliberate indifference. *Id.* at 223 (quotation omitted).

Peters claims that the County Defendants should be liable for failure to train officers on addressing inmate medical requests and on supplying grievances. He alleges that prison staff's failure to properly address his medical needs and failure to supply a grievance form violates his rights. However, the failure to respond to a single inmate's complaints about a single issue over a five-day period does not constitute a pattern of constitutional violations. Additionally, failing to supply a grievance form is not, itself, a constitutional violation. *See, e.g.*, *Glenn v. DelBalso*, 599 F. App'x 457, 459 (3d Cir. 2015) (because access to prison grievance procedures is not a constitutionally mandated right, "allegations of improprieties in the handling of grievances do not state a cognizable claim under § 1983"). And disagreement regarding the proper course of medical treatment does not amount to an Eighth Amendment violation. *Lanzaro*, 834 F.2d at 346.

Furthermore, Peters cannot proceed on a "single-incident liability" theory because he does not allege facts suggesting that the need for training on around-the-clock medical care and supplying grievances was "obvious." "Liability in single-incident cases depends on the likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights." *Thomas*, 479 F.3d at 223-224 (quotation omitted). Peters fails to allege any facts suggesting that correctional officers encountered warnings on these issues frequently enough that a constitutional violation would be the consequence of a failure to train. As such, the Court will dismiss the *Monell* claim against the County Defendants.

### E.    Claim under 42 U.S.C. § 1988

Peters "seeks recovery of any cost associated with this suit pursuant to 42 U.S.C. [§] 1988." (Doc. 1, p. 10). Section 1988 contains provisions addressing attorney's fees and expert fees in civil rights actions. However, it is well-settled that § 1988 does not create an independent cause of action. *Moor v. Alameda County*, 411 U.S. 693, 702 (1973) (holding that § 1988 does not independently create a federal cause of action); *Reed v. Philadelphia Hous. Auth.*, 372 F.Supp. 686, 698 (E.D. Pa. 1974) ("The Supreme Court extensively reviewed the legislative history of § 1988 in *Moor*, and concluded that the provision was remedial only, and did not create an independent federal cause of action."); *see also Schroder v. Volcker*, 864 F.2d 97, 99 (10th Cir. 1988) ("section 1988 does not create independent causes of action, it simply 'defines procedures under which remedies may be

sought in civil rights actions'") (citations omitted).  Accordingly, the motion to dismiss the §

1988 claim will be granted.

### F.    Claim Pursuant to the Pennsylvania Constitution

Peters sets forth a cause of action for an alleged violation of Article 1 §§ 11 and 13

of the Pennsylvania Constitution.  (Doc. 1, pp. 8-9).  As the Third Circuit has recognized,

however, "[n]o Pennsylvania statute establishes, and no Pennsylvania court has

recognized, a private cause of action for damages under the Pennsylvania Constitution."

*Pocono Mtn. Charter Sch. v. Pocono Mtn. Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011).

Accordingly, the Court will dismiss Peters' claim pursuant to the Pennsylvania Constitution.

## IV.    Leave to Amend

When a complaint fails to present a *prima facie* case of liability, district courts must

generally grant leave to amend before dismissing the complaint.  *See Grayson v. Mayview

State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d

Cir. 2000).  Specifically, the Third Circuit Court of Appeals has admonished that when a

complaint is subject to dismissal for failure to state a claim, courts should liberally grant

leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515

F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).  For the reasons set

forth above, Peters' claims are legally and factually flawed; thus, the Court concludes that

curative amendment would be futile.  Moreover, Peters failed to respond to the County

Defendants' motion to dismiss, despite being granted an extension of time to do so.

## V.   Federal Rule of Civil Procedure 4(m)

Rule 4(m) sets forth the following time frame a plaintiff has to serve a defendant with the summons and copy of the complaint:

> If a defendant is not served within 90 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).  The John Doe Defendants were named in the complaint that was filed on September 9, 2022 and, to date, have not been identified or served in this case.  The Court must engage in a two-step process in determining whether to dismiss the unidentified, non-served Defendants or grant Peters additional time to effect service.  "First, the district court should determine whether good cause exists for an extension of time.  If good cause is present, the district court must extend time for service and the inquiry is ended.  If, however, good cause does not exist, the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service." *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995).  Good cause requires good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance with the time specified in the rules. *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995).  In determining whether good cause exists, a court's "primary focus is on the plaintiff's reasons for not complying with the time limit in the first place." *Id.*  Although

15

prejudice is a factor to be considered, the absence of prejudice to the opposing party alone does not constitute good cause to excuse late service. *Id.*

In the present matter, Peters failed to establish good cause. After the expiration of the ninety-day time period set forth in Rule 4(m), the Court notified Peters that the action against the John Doe Defendants was subject to dismissal and directed him to show cause why the action against these Defendants should not be dismissed pursuant to Rule 4(m). (Doc. 28). Peters failed to respond to the Rule 4 show cause order, and Peters' *pro se* status is not good cause to excuse his failure to timely identify or serve these Defendants. *Veal v. United States*, 84 F. App'x 253, 256 (3d Cir. 2004). Based upon the lack of *any* explanation for his failure to adhere to the requirements of Rule 4, the Court finds that Peters failed to establish good cause.

If a plaintiff cannot show good cause for his failure to serve the defendant within ninety days, a district court may either dismiss the defendant, or exercise its discretion to order that service be made within a specific time. *Petrucelli*, 46 F.3d at 1305; *see also* FED. R. CIV. P. 4(m). It is Peters' responsibility to properly identify all defendants, and provide accurate mailing addresses for the defendants, in a timely fashion. (*See* Doc. 14 ¶¶ 8-9) (advising Peters that failure to properly name a defendant, or provide an accurate mailing address for a defendant, may result in dismissal of the claims against that defendant pursuant to Federal Rule of Civil Procedure 4(m)).

In light of Peters' lack of good faith effort to identify or serve the John Doe Defendants, despite this Court's warning of the possible consequences, including dismissal, the Court concludes that dismissal is appropriate under the present circumstances. Accordingly, the non-identified, non-served Defendants will be dismissed from this action.

**VI.     Conclusion**

Based on the foregoing, the Court will grant the Rule 12(b) motion to dismiss by the Perry County Prison and Warden Barclay.  (Doc. 23).  The Court will also dismiss the action against the John Doe Defendants pursuant to Federal Rule of Civil Procedure 4(m).  A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: May _____, 2023